The People of the State of Illinois, Plaintiff-Appellee, v. Bernard Graves, Defendant-Appellant.

(No. 12380; ▮▮▮▮▮▮▮▮▮)

Fourth District—March 20, 1975.

John F. McNichols and Thomas Nelson, both of State Appellate Defender's Office, of Springfield, for appellant.

Paul R. Welch, State's Attorney, of Bloomington, for the People.

Mr. PRESIDING JUSTICE SIMKINS delivered the opinion of the court:

Defendant, Bernard Graves, appeals from his conviction following a jury trial for the offense of voluntary manslaughter and from a sentence imposed of 3 to 9 years' imprisonment.

The Illinois Appellate Defender Project has moved to withdraw as counsel for defendant, and appended to the motion is a brief in conformity with *Anders v. State of California*, 386 U.S. 738. The record shows proof of service of the motion and brief upon the defendant. The motion was continued to enable defendant to file additional suggestions, and notice of this opportunity was given to him. None were filed.

In discharge of our responsibilities we have examined the record. On October 17, 1972, defendant was indicted for the murder of Percy Brown. On October 18, 1972, the public defender was appointed to represent defendant, and defendant entered a plea of not guilty. On

October 27, 1972, defendant filed a discovery motion which included a request for the following:

"9. * * * A list of the names and addresses of any persons who would be favorable to the accused;

10. Production of all police reports pertaining to this case;

11. A list of names and addresses of any persons having personal knowledge of the offense or any elements thereof;"

On December 18, 1972, the request for the discovery of the above items was denied by the court. The defendant was, however, granted extensive discovery, including "[a]ll material or information within the possession or control of the State which tends to negate the guilt of the accused as to the offense charged or would tend to reduce the punishment thereof." On December 18, 1972, defense counsel moved for a hearing to determine defendant's competency to stand trial, and said motion was granted by the trial court. On March 7, 1973, a competency hearing was held, and after being advised of his right to a jury to determine his competency, defendant indicated that he wished to waive such right. A psychiatric report was admitted into evidence indicating that defendant was competent to stand trial. The trial court then found that defendant was competent to stand trial. On March 12, 1973, an extensive voir dire was commenced, and the jury was selected.

The following evidence was adduced at the trial by the State: On September 14, 1972, defendant and several other men, including the decedent, were playing cards for money at the Third Ward Club in Bloomington, Illinois. James Jones testified that he was participating in the game on the evening in question with defendant and decedent when two new men entered the game. As decedent adjusted his seat, a card fell from the seat of decedent's chair. He stated that defendant saw the card fall, became very angry, and picked up a beer bottle, but was restrained by a Mr. Johnson. He stated that defendant and decedent then began arguing and that defendant accused the decedent of cheating. He stated that decedent did not deny he had been cheating nor did he respond to defendant. He further stated that defendant followed decedent into the bar area and that defendant stated to decedent that he would shoot him if he ever did that again. He stated that defendant became very angry and left the club whereupon decedent returned to the back room for more cards. He stated that defendant returned a few minutes later with his hand on a gun carried in a holster. He stated that defendant then went into the back room, and several minutes later he heard a shot and saw defendant leave the building. Several people then came running out of the back room yelling that Percy Brown had been shot. Robert Bacon and Evert Lenard essentially verified the testimony

of Jones. Joe Thornton testified that the first game broke up when defendant accused decedent of cheating. He stated that he then went out to the bar area and asked decedent if he wanted to play some more cards. Decedent replied affirmatively, and a new game commenced. He stated that defendant then entered the room with a holster and gun. He stated that defendant walked over to the table, pulled the gun out, pointed it at decedent's head, shot him in the temple, and turned around and walked out without saying a word. Michael Thornton essentially verified the testimony of Joe Thornton. It was then stipulated to that decedent died of unconscious-state pneumonia caused by a bullet wound in the brain, that a .38-caliber revolver with holster and five live shells was recovered from defendant's automobile at 10:05 P.M. on September 14, 1972, in Peoria, Illinois, and that upon apprehension defendant told the police, "You have got the right guy. He was cheating when gambling. The gun is on the floor under the seat." It was also stipulated to that the bullet found by police at the Club had been fired by the gun found in defendant's car, and that on September 15, 1972, defendant, after being advised of his *Miranda* rights, gave a voluntary signed statement to the effect that he pointed the gun at decedent and stated, "You son of a bitch you don't do people like that," and the gun "went off." The trial court then refused defendant's motion for a directed verdict as to murder.

The following evidence was adduced by the defense. Ada Graves, defendant's wife, testified that defendant is a diabetic, requires insulin, and is on a special diet. Defendant stated that on the date in question he went to Bloomington to attend the wake of a former brother-in-law, that he discovered that the wake was the following day, and that he then went to the Third Ward Club to play cards. He further stated that after two new men entered the game, he saw a card fall from the seat of decedent. He stated that he put his hand on a beer bottle and accused decedent of cheating, but decedent said nothing and looked at him "like I was dirt." He stated that he became extremely angry, that he followed decedent into the bar, that he called decedent dirty names, but that decedent simply sneered at him. He stated that he then walked out to his car to return home, but decided instead to get his gun and go back inside to scare decedent. He stated that he then walked into the back room, that he stated to decedent, "You shouldn't you dirty son of a bitch, you doing people like this," that he pointed the gun at decedent, and that the gun went off. He further stated that at no time did decedent offer to give him his money back or deny that he was cheating. He stated that he did not intend to kill or harm decedent, that he did not recall pulling the trigger, that he was still very angry

at the time of the killing, and that he only wanted to scare decedent. On cross examination he stated that he may have told decedent at the bar that he might shoot him. William Rath, defendant's employer, and Rev. Hightower testified that defendant's reputation for truth and veracity in the community is very good.

At the instruction conference defendant tendered an instruction on the included offense of voluntary manslaughter (Defendant's Instruction No. 11). The State's objection to such an instruction was overruled by the court, and the court found that there was sufficient evidence of provocation to justify the giving of the instruction. A murder and a voluntary manslaughter instruction were given to the jury, and a verdict was returned finding defendant guilty of voluntary manslaughter. On May 22, 1973, defendant's motion for a new trial was denied and a sentencing hearing was held. The presentencing report indicated that this 52-year-old defendant had only one prior misdemeanor and a good work record. The State offered no evidence in aggravation. The trial court then sentenced defendant to 3 to 9 years' imprisonment.

We agree that this record discloses no justiciable issue for review and that the appeal is without merit and frivolous. Accordingly, the motion of the Illinois Defender Project to withdraw as defendant's counsel is allowed and the judgment of the trial court is affirmed.

Judgment affirmed.

CRAVEN and TRAPP, JJ., concur.